Stewaet, J.
Since defendant did not appeal from the judgment which restrained him from interfering with plaintiff’s civil service status as a police radio operator, the sole question before us is whether employees occupying certain positions in the police department of Youngstown may be detailed by the chief of police to other positions in the department without the consent of the civil service commission.
Section 4374, General Code, provides:
“The police department of each city shall be composed of a chief of police and such other officers, patrolmen and employees as council shall, from time to time, provide by ordinance.”
Section 4372, General Code, provides:
“The chief of police shall have exclusive control of the stationing and transfer of all patrolmen and other *40 officers and employees in the department, under such general rules and regulations as the director of public safety prescribes.”
It is to be noted that there is no classification in the statute of position of radio operator, but that classification is made in the salary ordinance of the city of Youngstown, which provides, inter alia, for four police radio operators and 176 patrolmen, each with a salary of $3,540 per year.
Youngstown is a home-rule charter city, and section 48 of its charter reads in part:
‘ ‘ The chief of police shall be the head of the Department of Police and shall have exclusive control of the stationing and transfer of all patrolmen and other officers and employees constituting the police force.
“The police force shall be composed of a chief, and such officers, patrolmen and other employees as may be provided by ordinance of the council.”
If that provision of the charter is valid, the chief of police, in plain and unambiguous language, is given full and exclusive authority to assign to any officer or employee, who is a member of the police force, the performance of any police function.
There is no office of director of public safety under the provisions of Youngstown’s city charter, and the duties pertaining to such office are performed by the chief of police as the “head of the Department of Police. ’ ’
Under Sections 3 and 7, Article XVIII of the Ohio Constitution, municipalities have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with general laws, and any municipality may frame and adopt or amend a charter for its government and exercise thereunder all powers of local self-government. i
*41 The organization and regulation of its police force, as well as its civil service functions, are within a municipality’s powers of local self-government. As to civil service functions, see State, ex rel. Lentz et al., Civil Service Commission, v. Edwards, 90 Ohio St., 305, 107 N. E., 768.
In the case of Lapolla v. Davis, 55 Ohio Law Abs., 490, it was held that the provision in the Youngstown charter placing the position of police chief in the unclassified service is paramount to Section 486-8, General Code, which places that position in the classified service subject to competitive examination. A motion to certify the record in that case was overruled by this court and an appeal as of right dismissed (151 Ohio St., 550, 86 N. E. [2d], 615).
In the present case plaintiff retains his status as a police radio operator, he has the same pay whether working as a police officer in that capacity or as a patrolman, and he has all the rights which that status gives him to take promotional examinations or any other privileges, but, since he is one of the employees constituting the police force, the chief of police has the right to assign to him police duties different from those which he has been performing.
The record shows that the transfer was made because plaintiff had been suspended four days for insubordination, the order of which suspension the civil service commission affirmed, and because he had made a mistake in checking an automobile license for police authorities outside the city of Youngstown.
Whether the chief of police should have control and power over the employees in his department, which the charter of the city of Youngstown gives him, is a question for the people of Youngstown, and unless and until they see fit to amend their charter it is impossible to see how the language of section 48 thereof can have any other meaning than that which we have ascribed to it.
*42 The judgment of the Court of Appeals affirming the judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

Weygandt, C. J., Taft, Hart and Zimmerman, JJ., concur.
Middleton and Matthias, JJ., dissent.